### CONSOLIDATED GAS ELECTRIC LIGHT & POWER CO. OF BALTIMORE v. SIGGINS et al.

Civ. A. 3274.

United States District Court
M. D. Pennsylvania.

Aug. 7, 1951.

Walter L. Hill, Jr., and O'Malley, Harris, Harris & Warren all of Scranton, Pa., Frederick L. Ballard, Hamilton C. Connor, Jr. and Ballard, Spahr, Andrews & Ingersoll all of Philadelphia, Pa., Alfred P. Ramsey, G. Kenneth Reiblich, Baltimore, Md., for Consolidated Gas El. Light & Power Co.

Charles E. Thomas, Arthur J. Diskin, Lloyd S. Benjamin, all of Harrisburg, Pa., for Penna. Public Utility Commission.

No appearance for Safe Harbor Water Power Corp.

Before McLAUGHLIN, Circuit Judge, and WATSON and MURPHY, District Judges.

WATSON, District Judge.

This is an action by Consolidated Gas Electric Light and Power Company of Baltimore, Maryland, hereafter referred to as the Maryland Company, as a shareholder of Safe Harbor Water Power Corporation, hereafter referred to as Safe Harbor, to restrain and enjoin the Pennsylvania Public Utility Commission from proceeding in any manner with its investigation of the rates and charges of Safe Harbor under its Order of October 6, 1947, and from enforcing its Order of September 27, 1948, undertaking to prescribe, for a certain portion of the electric energy generated and sold by Safe Harbor, rates and charges different from those fixed by the Federal Power Commission by its Order of November 4, 1946, fixing the rates and charges for *all* of Safe Harbor's electric energy output.

This Court issued an Interlocutory Injunction on February 4, 1949, enjoining and restraining the Pennsylvania Commission and each of the Commissioners individual-

ly from proceeding in accordance with the Pennsylvania Commission's Order of October 6, 1947, from enforcing or giving any effect to its Order of September 27, 1948, as modified by its Orders of October 18, 1948, December 13, 1948, and January 3, 1949, ordering the Pennsylvania Water and Power Company, hereafter referred to as the Pennsylvania Company, and Safe Harbor to file tariffs, and also enjoining and restraining Safe Harbor from filing tariffs with the Pennsylvania Commission under the above orders.

A hearing on a motion for a permanent injunction was held by this Court. The Pennsylvania Company and the Pennsylvania Commission preliminarily filed motions for continuance, which motions were denied.

The sole issue before this Court is whether the Pennsylvania Commission may validly exercise jurisdiction over the rates and charges of Safe Harbor while an order of the Federal Commission fixing and prescribing all rates and charges of Safe Harbor remains in force.

In December, 1941, the Court of Appeals for the Third Circuit found that the Federal Commission was without jurisdiction to regulate Safe Harbor's rates under Section 20, Part I of the Federal Power Act, 16 U.S.C.A. § 813, because it was not shown that the states of Pennsylvania and Maryland were unable to agree through their properly constituted authorities on the rates to be charged by Safe Harbor for the sale of the electric energy generated and transmitted by it in interstate commerce.[1]

On September 1, 1944, the Federal Commission, acting upon the request of the Public Service Commission of Maryland, and others, instituted a new investigation to determine the reasonableness of Safe Harbor's rates. By its order of November 4, 1946, the Federal Commission reduced the rates which Safe Harbor may charge for electric energy transmitted in interstate commerce. The Federal Com-

---

1. Safe Harbor Water Power Corporation v. Federal Power Commission, 3 Cir., 1941, 124 F.2d 800, certiorari denied 1942, 316 U.S. 663, 62 S.Ct. 943, 86 L. Ed. 1740.

mission ruled that it possessed the power to regulate Safe Harbor's rates under Section 20, Part I, and also under Sections 205 and 206, Part II of the Federal Power Act. The Federal Commission denied Safe Harbor's application for a rehearing and Safe Harbor then filed a petition for review with the Court of Appeals for the Third Circuit.

By its order of September 27, 1948, the Pennsylvania Commission undertook to prescribe, for a portion of the electric energy generated and sold by Safe Harbor, rates different from those fixed by the Federal Commission in its order of November 4, 1946.

On December 30, 1949, the Court of Appeals for the Third Circuit affirmed the Order of the Federal Commission.[2] It sustained the Federal Commission's power to act under Section 20 of Part I of the Federal Power Act, asserting there was ample evidence to support the Federal Commission's finding that the States of Pennsylvania and Maryland had been unable to agree as to the rates to be charged by Safe Harbor. It also upheld the Federal Commission's power to regulate the rates under Part II of the Act as Safe Harbor was a "public utility" as defined in Section 201(e), Part II, and created electric energy which was dispensed by the prescribed jurisdictional facilities in interstate wholesale rates. In the Court's opinion, it was stated that "The Federal Power Commission has found on evidence which admits of no serious dispute, that Safe Harbor owns and operates the prescribed jurisdictional facilities".

Defendants contend that the Court of Appeals for the Third Circuit, in affirming the order of the Federal Commission fixing all the rates of Safe Harbor, relied on a Three Party Agreement between the Maryland Company, the Pennsylvania Company, and Safe Harbor, dated June 1, 1931, whereby Safe Harbor agreed to sell its entire output to the Maryland Company and the Pennsylvania Company, to wit, ⅔ to the Maryland Company and ⅓ to the Pennsylvania Company.

■ Defendants point out that in the case of Pennsylvania Water & Power Co. v. Consolidated Gas & Electric Light & Power Company, the District Court for the District of Maryland, 97 F.Supp. 952 found the above Three Party Agreement invalid as it designs a restraint violative of the Sherman Act, 15 U.S.C.A. § 1 et seq., and in the process breaks the Pennsylvania laws by reducing Safe Harbor from a public utility to an impotent agency of the other parties. The Court followed the decision of the Court of Appeals for the Fourth Circuit,[3] wherein the Court declared a Two-Party Agreement between the Maryland Company and the Pennsylvania Company invalid as an illegal restraint of trade or commerce in violation of the Sherman Anti-Trust Act. The Two-Party Agreement and the Three Party Agreement were closely tied together by their terms.

Defendants maintain that the declaration of the invalidity of the Three Party Agreement has destroyed the basis for the finding of the so-called "integrated interstate electric system" referred to by the Court of Appeals for the Third Circuit, and thereby invalidates the Federal Commission's rate order.

■■ The same argument was raised by the Defendants in a recent case before the Court of Appeals for the District of Columbia, wherein the Pennsylvania Company and the Pennsylvania Commission filed a petition for review of the Federal Commission's order of January 5, 1949, fixing the rates of all of the Pennsylvania Company's sales except the sales to the Pennsylvania Railroad, which was not a sale for resale.[4] The Court of Appeals, in

2. Safe Harbor Water Power Corporation v. Federal Power Commission, 3 Cir., 1949, 179 F.2d 179, certiorari denied 1950, 339 U.S. 957, 70 S.Ct. 980, 94 L. Ed. 1368.

3. Pennsylvania Water and Power Company v. Consolidated Gas Electric Light &

Power Company, 4 Cir., 1950, 184 F.2d 552, certiorari denied, 1950, 340 U.S. 906, 71 S.Ct. 282.

4. Pennsylvania Water & Power Company and Susquehanna Transmission Company of Maryland v. Federal Power Commission; Pennsylvania Public Utility Com-

denying the motions to set aside or remand the Commission's orders, held that the validity of the Commission's order was not dependent upon the legality of the contracts under the anti-trust laws.[5] The opinion of the majority of the Court contained a thorough analysis of the anti-trust laws and their effect upon regulated industries controlled by federal statutes, such as the Federal Power Act, and stated, "In our view, the Fourth Circuit's opinion neither purported to nor did relieve Penn Water from its obligation under the Federal Power Act to continue the then-existing services and rates. It is those services and rates, reflecting underlying operations, which were the subject of the Commission's order. 'A rate is not necessarily. illegal because it is the result of a conspiracy in restraint of trade in violation of the Anti-Trust Act. What rates are legal is determined by' the regulatory statute * * *"

The Court went on to hold that there was substantial evidence to support the Federal Commission's finding that it had power to fix the rates of the Pennsylvania Company under Parts I and II of the Federal Power Act. The Court of Appeals for the Third Circuit made a similar finding in the petition for review by Safe Harbor.[6]

The Court of Appeals for the Third Circuit having held that the Federal Commission had jurisdiction to fix the rates and charges for *all* of Safe Harbor's electric energy output as it was delivered to an integrated interstate electric system, and the Court of Appeals for the District of Columbia having held that the validity of the · Commission's orders were not affected by the legality of the contracts under the anti-trust laws, it is clear that the Pennsylvania Commission's order attempting to · regulate a portion of the rates charged by Safe Harbor, which were already regulated by the Federal Commission's order, is null and void. It is fundamental that the federal power is supreme

where there is a conflict of federal and state power over the same subject matter in the field of interstate commerce. Houston East & West Texas Railway v. United States, 1914, 234 U.S. 342, 351, 34 S.Ct. 833, 58 L.Ed. 1341.

The Court makes the following findings. of fact and conclusions of law:

### Findings of Fact

1. Plaintiff, Consolidated Gas Electric Light and Power Company of Maryland, is a Maryland Corporation and owns 50% of the voting stock of Safe Harbor Water Power Corporation, a Pennsylvania Corporation.

2. The Pennsylvania Water and Power Company, one of the Defendants, is a Pennsylvania Corporation and owns 50% of the voting stock of Safe Harbor Water Power Corporation.

3. Safe Harbor Water Power Corporation, one of the Defendants, is a Pennsylvania Corporation and operates a hydroelectric power plant on the Susquehanna River at Safe Harbor, Pennsylvania, under a 50 year license issued to it in 1930 by the Federal Power Commission.

4. Under a Three Party Agreement dated June 1, 1931, Safe Harbor Water Power Corporation sells all of the electric energy created by it to its two parent companies, to wit, two-thirds to the Consolidated Gas Electric Light and Power Company of Baltimore, and one-third to the Pennsylvania Water and Power Company.

5. On November 4, 1946, the Federal Power Commission issued an order fixing the rates and charges for *all* of Safe Harbor's electric energy output.

6. On September 27, 1948, the Pennsylvania Public Utility Commission issued an order, whereby Safe Harbor Water Power Corporation was ordered to file Tariffs. on February 15, 1949, to become effective March 1, 1949.

---

mission v. Federal Power Commission; Pennsylvania Water & Power Company and Susquehanna Transmission Company of Maryland v. Federal Power Commission, —— F.2d ——.

5. Judge Wilbur K. Miller, dissenting.

6. Safe Harbor Water Power Corporation v. Federal Power Commission, supra, footnote 2.

7. On February 4, 1949, this Court issued an Interlocutory Injunction enjoining and restraining the Pennsylvania Public Utility Commission from enforcing its order of September 27, 1948, as modified by its orders of October 18, 1948, December 13, 1948, and January 3, 1949, and also enjoined the Safe Harbor Water Power Corporation from filing tariffs in accordance with such orders.

8. The Three Party Agreement between Safe Harbor Water Power Corporation, the Consolidated Gas Electric Light and Power Company of Baltimore, and the Pennsylvania Water and Power Company, dated June 1, 1931, was declared invalid by the District Court for the District of Maryland as violative of the Sherman Act and the Pennsylvania laws.

### Conclusions of Law

1. Safe Harbor Water Power Corporation's electric energy output is delivered to an integrated interstate electric system, constituting wholesale sales in interstate commerce.

2. The Federal Power Commission had jurisdiction under Part I and Part II of the Federal Power Act to fix the rates and charges for all of Safe Harbor's electric system.

3. A rate order is not necessarily illegal because it is the result of a conspiracy in restraint of trade in violation of the Anti-Trust Act.

4. The anti-trust laws are superseded by more specific regulatory statutes to the extent of the repugnancy between them.

5. The decision of the District Court for the District of Maryland, declaring the Three Party Agreement between Safe Harbor Water Power Corporation, the Consolidated Gas Electric Light and Power Company of Baltimore, and the Pennsylvania Water and Power Company invalid, did not invalidate the order of the Federal Power Commission fixing the rates and charges for all of Safe Harbor's electric energy output.

6. A conflict exists between the Order and Opinion of the Federal Power Commission, dated November 4, 1946, which assumes jurisdiction over the rates of Safe Harbor Power Corporation, and which is now in force, and the Order of the Pennsylvania Public Utility Commission dated September 27, 1948, which ordered Pennsylvania Water and Power Company and Safe Harbor Water Power Corporation to file temporary tariffs.

7. It is impossible for Safe Harbor Water Power Corporation to comply with the aforesaid inconsistent Orders, i. e., that of the Federal Power Commission and that of the Pennsylvania Public Utility Commission, without incurring the fines and penalties provided for disobedience of the Order not obeyed.

8. Where there is a conflict between federal and state power over the same subject matter in the field of interstate commerce, the federal power is supreme.

9. The Order of the Pennsylvania Public Utility Commission dated September 27, 1948, as modified by its Orders of October 18, 1948, December 13, 1948, and January 3, 1949, insofar as it affects the filing of tariffs by Safe Harbor Water Power Corporation is null and void.

10. Plaintiff is entitled to a permanent injunction in accordance with the findings and conclusions expressed herein.

An appropriate Order will be filed herewith.